1
2
3                    UNITED STATES DISTRICT COURT

4                          DISTRICT OF NEVADA

5                                * * *

6   THE ESTATE OF JILL ANN ESCHE, *et*        Case No. 3:21-cv-00520-MMD-CLB
    *al.*,
7                                             ORDER
                              Plaintiffs,
8           v.

9   RENOWN REGIONAL MEDICAL
    CENTER, *et al.*,
10
                              Defendants.
11

12  **I.    SUMMARY**

13          This is a sad case. A woman, Jill Ann Esche, died shortly after delivering her baby,

14  and after being held involuntarily at a hospital for more than a month. After Esche's death,

15  Plaintiffs The Estate of Jill Ann Esche, Sierra Jill Wofford (the baby that was born) by and

16  through her guardian ad litem Wayne Wofford (Esche's boyfriend at the time of her death),

17  and Cameron Scott Esche (Esche's son from a prior relationship) sued Defendants

18  Renown Regional Medical Center ("RRMC"), Marta J. Bunuel-Jordana, M.D., Caroline

19  Vasendin, M.D., Johanna Gruen, PhD., Maegen Smith, RN, and Caitlin E. Herschel, RN

20  (the "Renown Defendants"), and Earle Oki, M.D., alleging civil rights violations and

21  negligence claims. (ECF No. 81.) Before the Court are the parties' motions for summary

22  judgment (ECF Nos. 93, 95, 99), along with some corresponding motions to seal (ECF

23  Nos. 94, 96) and a motion to exceed page limits (ECF No. 112).[1] As further explained

24  below, the Court will grant Dr. Oki's motion because he is not a state actor and there is

25  no evidence that he conspired with Renown Defendants, and mostly grant Renown

26  Defendants' motion, but let certain claims proceed against them.

27

28
    ────────────────
            [1]The Court also reviewed the responses and replies corresponding to these
    motions.

## II.    BACKGROUND

The following facts are undisputed unless otherwise noted. On March 18, 2020, Jill Ann Esche sought to establish a primary care relationship with a doctor at the Carson Tahoe Hospital ("CTH"). (ECF No. 99-1 at 2-4.) She returned to the Emergency Department ("ED") at CTH on April 13, 2020, four weeks pregnant, concerned because she had been assaulted. (*Id.* at 5-8.) Another record from September 2020 confirmed that she was pregnant. (*Id.* at 9.)

But on October 19, 2020, Esche presented again at the CTH ED and was diagnosed with severe hypertension. (ECF No. 93 at 3; ECF No. 95 at 5.) Medical providers at CTH transferred Esche to RRMC because CTH does not have a neonatal intensive care unit, and severe hypertension presents risks to both mother and fetus. (*Id.*) After she was transferred, Esche left RRMC against medical advice. (ECF No. 95 at 5-6.) But she returned to CTH later that evening, displaying erratic behavior and threatening staff, leading Dr. Heidi Oberhansli to initiate an emergency mental health hold on Esche under NRS § 433A.160. (ECF No. 95-8 at 8-16.)

On October 20, 2020, Esche was again transferred to RRMC under the legal hold initiated at CTH by Dr. Oberhansli and was admitted by Defendant Dr. Oki for inpatient treatment of her severe hypertension and care of her then-unborn baby, Plaintiff Sierra Jill Wofford. (ECF No. 93 at 4; ECF No. 95 at 7.) Dr. Caroline Vasendin, RRMC's consulting psychiatrist, reviewed the legal hold and confirmed Esche's continued aggressive and agitated state due to mental illness. (ECF No. 93 at 4.) Vasendin accordingly filed a petition on October 21, 2020, with the Second Judicial District Court for Washoe County, Nevada, for involuntary court-ordered admission under NRS § 433A.200, citing the need for further psychiatric stabilization to prevent Esche from harming herself or others. (ECF No. 93-7 at 2-5.) Though Esche was not told this, the Second Judicial District Court appointed a public defender to represent her in these involuntary admission proceedings—Jennifer Rains of the Washoe County Public Defender's office. (ECF No. 93-5 at 94.) Renown Defendants provided weekly updates to

2

Esche's legal counsel, Ms. Rains, consisting of including her on a list stating that she was not medically cleared to appear at a hearing regarding the involuntary admission Dr. Vasendin initiated. (*Id.* at 96-97.) Upon weekly receipt of this list, Ms. Rains stipulated with her counterpart at the District Attorney's office to continue a hearing on Eshe's involuntary commitment to RRMC. (ECF No. 93-5 at 96-98.) The Second Judicial District Court granted these weekly continuances until after Eshe delivered her baby and tragically perished, meaning that the state court never held an in-person hearing on the legal hold applicable to Esche. (ECF Nos. 93-7, 81 at 13 (alleging time of death).)

Renown Defendants involuntarily kept Esche at RRMC for slightly over 30 days, until after she delivered her baby.[2] (ECF No. 93 at 4-5.) During her hospitalization, Esche underwent various medical and psychiatric treatments, including IV medications for severe gestational hypertension, unspecified mood disorder, and psychiatric stabilization. (*Id.*; *see also* ECF No. 95 at 12-13.) She faced restrictions, including being confined to a single room, and only allowed to use her phone sometimes. (ECF No. 93-5 at 9.) And as noted, nobody ever told her a lawyer had been assigned to her.

Esche successfully delivered her baby via caesarean section at RRMC. (ECF No. 93-5 at 12-14.) Shortly thereafter, on November 21, 2020, psychiatrist Dr. Marta Bunuel-Jordana evaluated Esche and decided to lift the legal hold. (*Id.* at 14-18.) Dr. Gruen agreed with this decision. (*Id.*) However, Esche still displayed signs of respiratory and emotional distress after Dr. Bunuel-Jordana and Dr. Gruen lifted the legal hold. (*Id.* at 25.) Indeed, Esche tried to pull out her peripherally inserted central catheter ("PICC") line. (*Id.*) Later that night, Esche decided to leave RRMC against medical advice even though nurses Caitlin E. Henschel and Maegen Smith, and Dr. Oki, counseled her against it. (*Id.*) Nobody reinstated the legal hold, and Esche was allowed to leave the hospital against

---

[2]Renown Defendants nonetheless assert compliance with NRS § 433A and Esche's due process rights during the time of her involuntary commitment. (ECF No. 93 at 6-12.) However, Plaintiffs argue that Defendants violated Esche's procedural and substantive due process rights by holding and treating her against her will, including improperly treating her without valid consent and holding her without proper judicial review. (ECF No. 99 at 18.)

1   medical advice. (*Id.*) At this point, it was early in the morning of November 22, 2020. (*Id.*)

2   Esche left RRMC escorted by Renown security employees. (*Id.*) The police found her

3   dead later that morning near the hospital entrance. (ECF No. 81 at 13.)

4       Plaintiffs contend that Renown Defendants and Dr. Oki violated Esche's Fourth

5   Amendment right to be free from involuntary seizure, along with her rights to substantive

6   and procedural due process under the Fourteenth Amendment. (ECF No. 109 at 2, 110;

7   *see also* ECF No. 81 at 14-16.) They further contend her analogous rights under the

8   Nevada Constitution were similarly infringed. (ECF No. 81 at 22-25.) In addition, Plaintiffs

9   allege medical and general negligence, a conspiracy amongst Defendants to violate

10  Esche's civil rights, and that the constitutional violations they allege against Renown

11  Defendants should be imputed to RRMC because RRMC failed to adequately train or

12  supervise its employees. (*Id.* at 17-22.)

13  **III.    DISCUSSION**

14      Dr. Oki moves for summary judgment on all Plaintiffs' claims, Renown Defendants

15  move for summary judgment on all Plaintiffs' claims except for medical negligence, and

16  Plaintiffs move for summary judgment on their civil rights claims against Defendants, but

17  not their negligence claims. (ECF Nos. 93, 95, 99.) Plaintiffs also move for summary

18  judgment in their favor on discrete points of law. (ECF No. 99 at 2.) The Court sequentially

19  addresses the parties' arguments raised in their motions on a claim-by-claim basis after

20  first addressing the administrative issues of Plaintiffs' motion to exceed page limits[3] and

21  Defendants' motions to seal.

22      **A.    Motions to Seal**

23      Renown Defendants and Dr. Oki both filed motions to seal along with their motions

24  for summary judgment, seeking to file portions of their motions and some of the

25  corresponding exhibits under seal because they either reference, or are, records

26  ───────────────

27      [3]The Court grants this motion (ECF No. 112) because the Court agrees it is
    reasonable for Plaintiffs to take a few extra pages to reply to two responses from two

28  different sets of defendants and neither Dr. Oki nor Renown Defendants oppose the
    motion. *See* LR 7-3(c) (providing that while they are disfavored, the Court may grant a
    motion to exceed the page limits for good cause shown).

regarding Esche's mental and physical health. (ECF Nos. 94,[4] 94-1, 96.) Defendants argue that these documents should remain under seal because Esche has a strong privacy interest in the medical information contained in the medical and court records Defendants rely on in their motions. (*Id.*) However, Plaintiffs oppose both motions, countering in pertinent part that Esche is deceased, and the representative of her estate has waived her privacy interests in the records Defendants filed under seal. (ECF Nos. 102, 103; *see also* ECF Nos. 102-1, 103-1 (waiving privacy rights in medical records).) Plaintiffs accordingly ask that all Esche's records referenced in or attached to Defendants' motions be unsealed. (ECF Nos. 102, 103.) Because of this argument, the Court denies both motions to seal and will direct the Clerk of Court to unseal the records initially filed under seal.

The rights at issue here belong to Esche. As she is tragically deceased, the special administrator of her estate, her former boyfriend Wayne Wofford, may waive her rights. *See Marsh v. Cnty. of San Diego*, 680 F.3d 1148, 1153 n.1 (9th Cir. 2012) ("This privacy right belongs, not to the deceased, but to the survivors[.]") And Mr. Wofford has done so here. (ECF Nos. 102, 102-1, 103, 103-1.) Given this waiver, the Court directs the Clerk of Court to unseal the documents Defendants initially filed under seal out of apparent respect for Esche's medical privacy rights. After all, there is a First Amendment right to access to court proceedings and documents, and the United States Court of Appeals for the Ninth Circuit recently struck down a Hawaiian state court rule requiring categorical sealing of all medical and health records as overbroad—further supporting unsealing these sealed records that Mr. Wofford has waived Eshe's rights to anyway. *See Civ. Beat*

---

[4]The Renown Defendants' motion to seal is titled a 'notice' but the Court construes it as a motion to seal. (ECF No. 94.) Renown Defendants filed their motion to seal as an exhibit to the notice. (ECF No. 94-1.) The Court accordingly refers to this docket entry when it describes the arguments Renown Defendants raise in support of sealing. The Court further refers Renown Defendants' counsel to LR IA 10-5 to the extent they file any future motions to seal in this District. The approach they took here does not comply with that rule.

1    *L. Ctr. for the Pub. Int., Inc. v. Maile*, Case No. 23-15108, --- F.4th ----, 2024 WL 3958954

2    (9th Cir. Aug. 28, 2024).

3         **B.    Motions for Summary Judgment**

4         As noted, the parties filed cross-motions for summary judgment on Plaintiffs'

5    Section 1983 claims. (ECF Nos. 93, 95, 99.) Both Renown Defendants and Dr. Oki assert

6    threshold defenses to Plaintiffs' Section 1983 claims, so the Court addresses these

7    threshold defenses first. The Court's analysis below is otherwise organized by motion.[5]

8         **1.    Dr. Oki's Motion**

9         **a.    State Action**

10        Renown Defendants do not dispute that they are state actors for purposes of the

11   pending motions (ECF No. 105 at 20 n.18), but Dr. Oki does (ECF No. 95 at 17-20). Dr.

12   Oki specifically argues that he is not a state actor because he is not a RRMC employee,

13   but instead a physician with his own practice and admission privileges at RRMC, and

14   because he did not initiate or sign the legal hold documents that kept Esche at RRMC.

15   (*Id.*) Plaintiffs counter that Dr. Oki is a state actor because he provided medical care to

16   Esche, who was subject to an involuntary legal hold, and because he acted in concert

17   with Renown Defendants, who concede they are state actors under the circumstances.

18   (ECF No. 108 at 13-18.) The Court agrees with Dr. Oki.

19        The key question to answer in determining whether Dr. Oki is a state actor is

20   whether Dr. Oki, "'exercised power 'possessed by virtue of state law and made possible

21   only because the wrongdoer is clothed with the authority of state law.'" *Rawson v.*

22   *Recovery Innovations, Inc.*, 975 F.3d 742, 748 (9th Cir. 2020) (quoting *West v. Atkins*,

23   487 U.S. 42, 49 (1988)). But the Court must, "consider the full factual context of this case,

24

25        [5]In addition to incorrectly filing sealed materials, the Court further notes that
26   Renown Defendants filed a separate statement of undisputed facts. (ECF No. 93-1.) As
     Plaintiffs point out, this violates the applicable local rule, LR 56-1. (ECF No. 109 at 2.)
27   However, the Court will overlook Renown Defendants' violations of the Local Rules to get
     to the merits of the parties' arguments. *See* LR IA 1-4 (providing that the Court may *sua*
28   *sponte* waive application of a Local Rule if the interests of justice so require). But the
     Court cautions Renown Defendants' counsel to review the Court's Local Rules and
     comply with them going forward.

1    paying particular attention to the facts that played a material role in previous decisions."

2    *Id.* at 751. There is also a "presumption that private conduct does not constitute

3    governmental action." *Heineke v. Santa Clara Univ.*, 965 F.3d 1009, 1012 (9th Cir. 2020)

4    (quoting *Sutton v. Providence St. Joseph Med. Ctr.*, 192 F.3d 826, 835 (9th Cir. 1999)).

5    And here, the undisputed facts before the Court compel the conclusion that Dr. Oki was

6    not a state actor because he is not a RRMC employee, and he did not initiate or maintain

7    the legal hold.

8         To start, Dr. Oki testified at his deposition that he is not an employee of RRMC,

9    but instead a physician in private practice with hospital privileges at RRMC. (ECF No. 95-

10   2 at 6, 39.) He was Esche's treating physician, providing medical and obstetrical care

11   while Esche was at RRMC. (*Id.* at 7-8, 15-16.) He did not place Esche on a legal hold;

12   indeed, he testified that he has never placed a patient on a legal hold. (*Id.* at 15.) He

13   further testified that he did not tell Dr. Vasendin to extend the legal hold on Esche. (*Id.* at

14   20-21.) Nor did he order that Esche be administered anti-psychotic drugs, though Dr. Oki

15   followed psychiatry's recommendations that they be used. (*Id.* at 21.) Thus, Dr. Oki

16   testified both that he does not have an employment relationship with RRMC, and he was

17   not the one holding Esche at RRMC, either legally or with medications. This testimony is

18   all consistent with his argument that he is not a state actor as to Plaintiffs' Section 1983

19   claims.

20        And deposition testimony from other witnesses confirms Dr. Oki's testimony. Dr.

21   Vasendin[6] testified that Esche came to RRMC on a legal hold from CTH, which Dr.

22   Vasendin reviewed upon Esche's arrival. (ECF No. 95-4 at 7-8.) Dr. Vasendin extended

23   the legal hold that CTH initially imposed and was the doctor who prescribed anti-psychotic

24   drugs to psychologically stabilize Esche. (*Id.* at 8-12, 22.) She was also the doctor who

25   imposed the no-phone-call restriction on Esche. (*Id.* at 12, 22; *see also* ECF No. 93-5 at

26   9.) Dr. Vasendin further signed the involuntary petition for court-ordered admission to

27

28        [6]Caroline Vasendin, M.D. is a RRMC employee, along with Marta Bunuel-Jordana, M.D., and Johanna Gruen, Ph.D. (ECF No. 93 at 2.)

RRMC that kept Esche at RRMC. (ECF No. 95-4 at 22-25.) In addition, RRMC's legal hold administrator, Viviana Silva, confirmed that it was Psychiatry who initiated the hold pertinent to this case, and confirmed she never asked Dr. Oki to fill out a new certification for a legal hold. (ECF No. 95-12 at 4, 11.) Ms. Silva's testimony is therefore corroborative of both Dr. Oki and Dr. Vasendin's testimony. Based on this evidence, Dr. Oki is not a Renown employee, and he did not initiate or sign the legal hold documents that held Esche at Renown.

And while Plaintiffs argue that a private medical provider can be a state actor when initiating, extending, or enforcing state legal holds, they do not present any evidence that directly contradicts the evidence described above establishing that Dr. Oki did not initiate or extend the legal hold that held Esche at RRMC. (ECF No. 108 at 14.) Plaintiffs instead generally argue that 'Defendants' held Esche at RRMC by enforcing the mental health hold, but do not point to any evidence that Dr. Oki did specifically. (*Id.* at 15.) Plaintiffs further point to some evidence to establish the uncontested facts that Dr. Oki provided medical care to Esche while she was at RRMC, and that Esche repeatedly asked him to allow her to leave, but none of this establishes that Dr. Oki initiated or extended the legal hold either. (*Id.*) Indeed, one of the pages of Dr. Oki's notes Plaintiffs cite acknowledges the legal hold but does not state that he initiated or maintained the hold. (ECF No. 99-2 at 5.) The other notes Plaintiffs refer to were taken by psychiatrists, not Dr. Oki. (ECF No. 99-10 at 2 (containing notes from by Dr. Vasendin, who consistently testified that she was the one who extended the initial hold imposed by CTH and then applied for the new hold that kept Esche at RRMC), 16 (explaining restrictions that Dr. Bunuel-Jordana imposed on Esche), 19 ("Also explained that decisions about her legal hold would be made by the team psychiatrist."), 25 (containing Dr. Gruen's notes from a brief psychotherapy session on November 20, 2020).) Thus, Plaintiffs fail to create a genuine dispute of material fact that Dr. Oki was involved in initiating or continuing the legal hold that kept Esche at RRMC.

///

1    The evidence before the Court also does not support Plaintiffs' argument that Dr.

2    Oki is a state actor because he was collaborating with state actors. (ECF No. 108 at 17.)

3    The evidence described above consistently depicts Dr. Oki as merely acknowledging the

4    legal hold imposed and maintained by the psychiatrists making up a subset of Renown

5    Defendants and providing medical care to Esche. In addition, Ms. Rains, the public

6    defender appointed to represent Esche in the involuntary commitment proceedings,

7    testified that she had no contact with Esche's medical providers. (ECF No. 95-13 at 23.)

8    Thus, she necessarily had no contact with Dr. Oki, either. The facts before the Court do

9    not establish that Dr. Oki should be considered a state actor.

10    In addition, the caselaw that Plaintiffs proffer to support their argument that Dr. Oki

11    is a state actor is distinguishable. The medical providers who were found to be state

12    actors in the two primary cases Plaintiffs rely on were the ones who initiated or maintained

13    the legal hold under the pertinent state involuntary commitment statute. *See Cummings*

14    *v. Charter Hosp. of Las Vegas, Inc.*, 896 P.2d 1137, 1139, 1144 (Nev. 1995) (finding that

15    the medical providers who held someone under NRS § 433A.160 were state actors);

16    *Rawson v. Recovery Innovations, Inc.*, 975 F.3d 742, 752 (9th Cir. 2020) ("In that sense,

17    Defendants were 'clothed with the authority of state law' when they detained and forcibly

18    treated Rawson beyond the initial 72-hour emergency evaluation period."). As explained

19    above, the undisputed evidence before the Court shows that Dr. Oki did not sign or

20    maintain the legal hold that forced Esche to stay at RRMC. He was an independent

21    physician with privileges at RRMC who provided medical care to Esche. He is not similarly

22    situated to the medical providers found to be state actors in *Rawson* and *Cummings*.

23    In sum, Dr. Oki is not a state actor for purposes of this case. That means he is

24    entitled to summary judgment on Plaintiffs' Section 1983 claims (claims one and two).

25    *See Pasadena Republican Club v. W. Just. Ctr.*, 985 F.3d 1161, 1171 (9th Cir. 2021)

26    (affirming dismissal of Section 1983 claims against defendants because the Ninth Circuit

27    found they were "not state actors"). But the parties dispute whether this finding also

28    means that Dr. Oki is entitled to summary judgment on Plaintiffs' claims brought against

him alleging violations of Esche's rights under the Nevada Constitution. (ECF No. 81 at 22-25 (alleging violations of Esche's rights under Art. 1, Sec. 18 and Art. 1, Sec. 8(2) of the Nevada Constitution); *see also* ECF Nos. 108 at 13 (arguing that the fact Dr. Oki is not a state actor is irrelevant for these claims), 111 at 12 n.9 (disagreeing).) The Court agrees with Dr. Oki that he is also entitled to summary judgment on these claims because he is not a state actor.

Indeed, Dr. Oki is correct that the Nevada Supreme Court has applied the state action requirement to due process claims brought under the Nevada constitution. (ECF No. 111 at 12 n.9.) *See also Saticoy Bay LLC Series 350 Durango 104 v. Wells Fargo Home Mortg., a Div. of Wells Fargo Bank, N.A.*, 388 P.3d 970, 972-73 (Nev. 2017) (describing the federal and state due process clauses as equivalent and applying a state action requirement to both of them in ultimately determining that a homeowners' association cannot be considered a state actor); *Brandon v. HDSP Med. Unit*, Case No. 2:20-cv-00113-APG-VCF, 2020 WL 6876201, at *5 (D. Nev. Nov. 20, 2020) ("The Due Process Clause of Article I, Section 8(5) of the Nevada Constitution is coextensive with the Due Process Clause of the Fourteenth Amendment, so the same legal requirements would apply to any state law due process claim.") (citing *Wyman v. State*, 217 P.3d 572, 578 (Nev. 2009) (other citation omitted)). Similarly, as to Plaintiffs' unreasonable seizure claims, Nevada courts "look primarily to federal caselaw to complete [their] analysis[.]" *Mooney v. State*, 429 P.3d 953, 958 (Nev. App. 2018). And the *Mooney* court applied a state action requirement to an unreasonable seizure claim, evaluating that claim entirely with reference to the Fourth Amendment and Supreme Court caselaw interpreting it. *See generally id.* The state action requirement applies to Plaintiffs' Nevada Constitutional claims that parallel their Section 1983 claims. The Court accordingly finds that Dr. Oki is also entitled to summary judgment on Plaintiffs' claims alleging violations of his rights under the Nevada Constitution because he was not a state actor.

///

///

### b.    Conspiracy to Violate Civil Rights Claim

However, the Court's finding that Dr. Oki is not a state actor does not resolve Plaintiffs' claim against him for conspiracy to violate Esche's civil rights. Renown Defendants do not dispute that they are state actors, *see supra*, and Plaintiffs' claim is that Dr. Oki conspired with them to hold her against her will by 'providing a false narrative about her availability to participate in due process protections,' and participating in conferences regarding the involuntary commitment of Eshe. (ECF No. 81 at 21-22.) Plaintiffs' claim otherwise appears to allege a conspiracy to violate the same federal constitutional rights forming the basis of her Section 1983 claims. (*Id.* at 21 ("acted together to effect and maintain the deprivation of liberty and restriction of due process alleged above").) Thus, this claim could be viable because Plaintiffs allege Dr. Oki conspired with state actors. *See Pasadena Republican Club*, 985 F.3d at 1171 ("§ 1985(3) requires at least one of the wrongdoers in the alleged conspiracy to be a state actor").

But Dr. Oki argues he is nonetheless entitled to summary judgment on this claim because the evidence does not support it. (ECF No. 95 at 26-27.) He more specifically argues that the 'false narrative' allegation is not supported by the evidence because the hearings on Eshe's involuntary commitment were continued by stipulation between Ms. Rains, the public defender, and the District Attorney's office—not because he passed on false information about Esche's medical status (stating she was not medically cleared when in fact she was). (*Id.* at 27.) He further argues the evidence shows that the purpose of the conferences about Esche he participated in were Esche's nutrition and medical treatment, not to violate her civil rights. (*Id.*) Plaintiffs take a different view of the evidence (ECF No. 108 at 18), arguing that it supports their pertinent allegations, and Dr. Oki replies that the evidence supports his argument, not Plaintiffs' (ECF No. 111 at 15-16). The Court agrees with Dr. Oki that the evidence does not show he conspired to violate Esche's civil rights because of his role in the legal proceedings that kept Esche at RRMC or his participation in conferences about Esche's care.

Dr. Oki's argument is supported by the evidence he cites. He specifically cites the deposition testimony of the public defender assigned to Eshe's involuntary commitment proceedings, who testified both that hearings on involuntary commitment would only take place if a patient is medically cleared (because mental health treatment facilities do not often have adequate medical facilities and the law requires it), but Esche never was, and that any hearing on Esche's confinement was ultimately postponed past Esche's death based on stipulations between her office and the District Attorney's office. (ECF No. 95 at 27; *see also* ECF No. 95-13 at 7-8, 15-19.) This evidence negates the allegation that it was a 'false narrative' from Dr. Oki that was preventing a hearing on Esche's involuntary commitment because it presents a contradictory and plausible explanation supported by evidence. (ECF No. 81 at 21.) And Plaintiffs do not point to any evidence that Esche was medically able to attend hearings on her involuntary commitment.

Dr. Oki further cites his own deposition testimony and that of Dr. Vasendin to support his argument that the purpose of the conferences they held regarding Esche was to provide her appropriate care, not to violate her civil rights. (ECF No. 95 at 27; *see also* ECF No. 95-4 at 38-39 (describing the purpose of an ethics consultation as deciding what to do in response to Esche refusing to eat because that could hurt the baby); ECF No. 95-2 at 31 (recollecting that Dr. Oki participated in a conference regarding Esche because he thought they "wanted my input as to what my treatment plans were regarding Jill and what my concerns were.").) This evidence does not show that the purpose of these meetings was to violate Esche's civil rights. Dr. Oki has accordingly met his initial burden to show he is entitled to summary judgment on Plaintiffs' conspiracy claim. *See Zoslaw v. MCA Distrib. Corp.*, 693 F.2d 870, 883 (9th Cir. 1982) (stating that the moving party bears the initial burden).

In opposing the pertinent section of Dr. Oki's summary judgment motion, Plaintiffs cite evidence that does not quite support their contrary arguments. At most, they have presented a scintilla of evidence in support of their arguments—which is insufficient to successfully oppose summary judgment. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S.

242, 252 (1986). Specifically, Plaintiffs argue that Dr. Oki admits that he met with Dr. Vasendin to review a plan of care for Esche's mental health, including that she could not have her personal belongings, visitors, or phone calls. (ECF No. 108 at 18.) But they support this argument with deposition testimony from Dr. Vasendin in which she says she thinks she probably would have met with Dr. Oki to go over her plan for Esche's treatment (*compare id. with* ECF No. 95-4 at 19-20) and some treatment notes from Dr. Vasendin where Dr. Vasendin notes that she decided to extend the legal hold on Esche (ECF No. 99-10 at 5). Dr. Oki does not admit anything in this cited evidence. Indeed, both pieces of evidence suggest that Dr. Vasendin was setting a mental health treatment plan without input from Dr. Oki. And regardless, this evidence does not tend to show that Dr. Oki was meeting with Dr. Vasendin to conspire to violate Esche's civil rights.

Plaintiffs go on to cite some evidence that they argue shows Dr. Oki participated in maintaining the legal hold, but even as they argue it, it does not tend to show Dr. Oki passed false information on to someone to extend the legal hold or conspired with the purpose of violating her civil rights—which would be required to successfully oppose Dr. Oki's summary judgment motion. (ECF No. 108 at 18.) Indeed, Plaintiffs do not address Dr. Oki's contention supported by evidence that it was stipulations between the assigned public defender and the District Attorney's office that postponed hearings and thus extended the legal hold for lack of medical clearance. *See supra*. In sum, Plaintiffs have not proffered evidence sufficient to create a genuine dispute of material fact as to their conspiracy claim. The Court accordingly grants summary judgment on this claim in favor of Dr. Oki.

### c.    Negligence Claims

Finally, while Dr. Oki also argues he is entitled to summary judgment on Plaintiffs' negligence and professional negligence claims (ECF No. 95 at 27-30), this argument is beside the point because Plaintiffs do not allege their professional or general negligence claims against Dr. Oki. (ECF Nos. 81 at 19-21, 108 at 26-27 (noting that they do not assert these claims against Dr. Oki).)

1    In sum, the Court grants summary judgment in favor of Dr. Oki.[7]

2    ## 2.    Renown Defendants' Motion

3    Renown Defendants present a threshold argument that the Court addresses

4    before moving on to more claim-specific ones. The Court also notes at the outset of its

5    discussion of this motion that Renown Defendants do not move for summary judgment

6    on Plaintiff's fourth claim for wrongful death/medical negligence, so that claim will proceed

7    past summary judgment. (ECF No. 93 at 2 (summarizing the arguments in the motion but

8    declining to mention that Renown Defendants seek summary judgment on that claim);

9    *see also generally id.*) Indeed, Renown Defendants request that the professional

10   negligence claim against them be set for trial in their reply. (ECF No. 115 at 2.)

11   ## a.    Good Faith Defense

12   Renown Defendants assert that they are entitled to summary judgment on

13   Plaintiffs' claims 1-3 and 6-8 because they complied in good faith with Nevada's statutory

14   scheme for involuntary commitment of people in mental health crises, NRS § 433A, *et*

15   *seq.* (ECF No. 93 at 2, 8-12.) Said otherwise, Renown Defendants attempt to avail

16   themselves of the 'good faith' defense to Section 1983 claims. (*Id.*) Plaintiffs counter in

17   pertinent part that the 'good faith' defense does not clearly apply to Renown Defendants'

18   conduct primarily because Renown Defendants did not rely on anyone else's orders or

19   assurances in holding Esche, nor is this a situation where once-lawful conduct was

20   subsequently ruled unconstitutional. (ECF No. 109 at 30-31; ECF No. 99 at 26-29.) The

21   Court agrees with Plaintiffs.

22   "[Pr]ivate parties may invoke an affirmative defense of good faith to retrospective

23   monetary liability under 42 U.S.C. § 1983, where they acted in direct reliance on then-

24   binding Supreme Court precedent and presumptively-valid state law." *Danielson v. Inslee*,

25   945 F.3d 1096, 1097 (9th Cir. 2019). And the Ninth Circuit has otherwise held that a

27   ───────────

28   [7]Dr. Oki joined portions of Renown Defendants' motion for summary judgment (ECF No. 100), but that joinder is no longer relevant because the Court has already determined that Dr. Oki is entitled to summary judgment on all Plaintiffs' claims against him.

private party who acted upon the instructions of a local police department may also invoke a good faith defense. *See Clement v. City of Glendale*, 518 F.3d 1090, 1096-97 (9th Cir. 2008); *see also Model Civ. Jury Instr. 9th Cir. 9 Note 1* (2024), https://perma.cc/XM4T-WM9Y.

However, Renown Defendants only cite two cases in support of their argument that both fall into the latter category—where private actors did what state officers asked them to do. (ECF No. 93 at 9 (first citing *Clement*, 518 F.3d 1090, and then citing *Ingram v. Mouser*, Case No. 1:19-CV-00308-DCN, 2021 WL 329559 (D. Idaho Feb. 1, 2021)).) Indeed, as the *Ingram* court explained, those cases were similar because, in both, "the private actors proceeded at the behest of State authority and had no way of knowing the facts regarding whether the State had acted in a legal manner." 2021 WL 329559, at *7. The facts here are undisputedly different. Dr. Vasendin at RRMC first extended a legal hold imposed by Dr. Oberhansli at CTMC, then applied for Esche's involuntary admission herself. *See supra.* No police officer or employee of a Nevada state agency asked her to do that. Moreover, the statute upon which Renown Defendants rely is permissive; medical providers may temporarily put people they determine to be in a mental health crisis on a legal hold, *see* NRS § 433A.160(1), and later petition for their involuntary, court-ordered admission, NRS § 433A.200(1). Said otherwise, the state is not ordering medical providers to do anything by virtue of the statute. In sum, the facts here are distinguishable from the line of cases epitomized by *Clement*, 518 F.3d 1090, where state actors ask or order private actors to do things, and then those private actors can avail themselves of the good faith defense. Indeed, another court in this District has interpreted the good faith defense as requiring that "the action was authorized by the government[.]" *Borenstein v. Animal Found.*, 526 F. Supp. 3d 820, 853 (D. Nev. 2021) (citations omitted). The Court rules consistently here.

And while it seems possible that a private party could avail themselves of the "presumptively-valid state law" version of the good-faith defense described in *Danielson*, 945 F.3d at 1097, the Court was mostly only able to locate decisions applying that

exception to a similar factual context as *Danielson*—retroactive claims to recover involuntarily-paid union dues before the Supreme Court found the automatic deduction of wages to pay union dues unconstitutional in *Janus v. Am. Fed'n of State, Cnty., & Mun. Emps., Council 31*, 585 U.S. 878, 916, 929 (2018). *See, e.g.*, *Allen v. Santa Clara Cnty. Corr. Peace Officers Ass'n*, 38 F.4th 68, 70 (9th Cir. 2022); *Cook v. Brown*, 845 F. App'x 671, 672 (9th Cir. 2021). And the one exception to that general research result is a case upon which Plaintiffs rely (ECF No. 99 at 28)—*Rawson v. Recovery Innovations, Inc.*, Case No. C17-5342 BHS, 2022 WL 17142715, at *5 (W.D. Wash. Nov. 22, 2022). Factually, that case is much more like this one than the several cases the Court reviewed involving union dues, as it also involved claims against a private medical provider brought by a person held against their will under a state statute governing involuntary commitment. *See generally id.* The *Rawson* court found that case to be different than the union dues cases also described above, noting, "Defendants did not rely on anyone else's assurances or orders in holding Rawson, in forcibly injecting him, or in allegedly fabricating evidence against him. Similarly, this is not a situation where conduct that was once considered lawful was later ruled to be unconstitutional." *Id.* at *5. The Court finds *Rawson*'s reasoning persuasive. Dr. Vasendin did not rely on someone else's assurances in deciding to hold Esche under NRS § 433A.

The Court accordingly finds that Renown Defendants are not entitled to summary judgment on Plaintiffs' claims 1-3 and 6-8 under the 'good faith' defense to Section 1983 claims.

**b.    Unreasonable Seizure Claims**

Renown Defendants next argue they are entitled to summary judgment on Plaintiffs' first and seventh unreasonable seizure claims because they had probable cause to impose a legal hold on Esche and then hold her at RRMC against her will. (ECF No. 93 at 12-16.) Plaintiffs counter that probable cause may suffice for an initial, emergency detention, but her involuntary commitment became unreasonable because of the length of time it lasted and because the petition Dr. Vasendin filed with the state court

1   was never substantively ruled on by a judicial factfinder. (ECF No. 109 at 6-9.) The Court

2   agrees with Renown Defendants.

3       The involuntary seizure of someone experiencing a mental health crisis, "is

4   analogous to a criminal arrest and must therefore be supported by probable cause[.]"

5   *Maag v. Wessler*, 960 F.2d 773, 775 (9th Cir. 1991), *as amended on denial of reh'g* (Apr.

6   1, 1992) (citations omitted). And indeed, the statute that first Dr. Oberhansli at CTH and

7   then Dr. Vasendin at RRMC relied on to initially detain and treat Esche similarly required

8   them to have, "probable cause to believe that the person [was] a person in a mental health

9   crisis[.]" NRS § 433A.160(1). Nevada's related statute governing involuntary court-

10  ordered admission requires either a statement from certain specified types of medical and

11  mental health providers, "stating that he or she has examined the person alleged to be a

12  person in a mental health crisis and has concluded that the person is a person in a mental

13  health crisis" or has probable cause to believe the person is in a mental health crisis

14  because the person refused to submit to examination by an appropriately specialist

15  medical provider. NRS § 433A.200(1)(a), (b)(1). If the "person alleged to be a person in

16  a mental health crisis has been placed on a mental health crisis hold pursuant to NRS

17  433A.160 and the physician, physician assistant or advanced practice registered nurse

18  who examined the person alleged to be a person with a mental health crisis pursuant to

19  NRS 433A.165 determined that the person has a medical condition, other than a

20  psychiatric condition, which requires immediate treatment[,]" a sworn statement from that

21  person filed with the appropriate clerk of court may also suffice for involuntary admission.

22  NRS § 433A.200(1)(b)(2).

23      To the extent Plaintiffs even challenge the two emergency holds Dr. Oberhansli[8]

24  and then Dr. Vasendin imposed on Eshe under NRS § 433A.160(1), the Court finds that

25  these providers had probable cause to impose them. As to Dr. Oberhansli, she testified

26

27          [8]Dr. Oberhansli is not a defendant in this case, but Dr. Vasendin attached Dr.
28  Oberhansli's completed 'mental health crisis packet' to her petition for involuntary
    commitment (ECF No. 93-7 at 7), and Plaintiffs mention it in their pertinent argument (ECF
    No. 109 at 7).

1    she placed Esche on the initial hold because Esche was behaving irrationally and

2    combatively, telling Dr. Oberhansli she was going to go home and cut her baby out herself

3    or have a midwife do it, threatening her and the nurses, and overall, Dr. Oberhansli felt,

4    "as she was a danger to herself and her unborn baby and was not expressing good

5    judgment, that I had no choice but to hold her until she could be evaluated by a psychiatric

6    provider to deem whether she was or wasn't dangerous to herself or others." (ECF No.

7    109-1 at 3-4.) Based on this testimony, Dr. Oberhansli had probable cause to find that

8    Esche was a person in a mental health crisis sufficient for a temporary hold under NRS §

9    433A.160(1) because a person in a mental health crisis is defined as someone with a

10   mental illness, "[w]hose capacity to exercise self-control, judgment and discretion in the

11   conduct of the person's affairs and social relations or to care for his or her personal needs

12   is diminished, as a result of the mental illness, to the extent that the person presents a

13   substantial likelihood of serious harm to himself or herself or others[.]" NRS §

14   433A.0175(1)(b). As reported by Dr. Oberhansli, the information Esche was telling Dr.

15   Oberhansli reasonably suggested to Dr. Oberhansli that Esche was likely to harm herself

16   or her unborn baby.

17       The same goes for Dr. Vasendin when she initially extended the temporary hold

18   Dr. Oberhansli imposed. Dr. Vasendin similarly determined Esche presented a risk to

19   herself and her baby after her initial examination of Esche. (ECF No. 93-5 at 8.) Dr.

20   Vasendin wrote in her contemporaneous notes explaining her decision to extend Esche's

21   legal hold:

22   Assessment: Pt is agitated, with poor insight and judgment. She has poverty of thought, and is very guarded
     when providing history. She is mainly concerned with discharge, and does not appear to be having concerns
23   with her pregnancy and her baby. No family support identified. Pt at this time continues to have an acute
     elevated risk for danger to self and her baby. She needs further psychiatric stabilization for her safety.

24

25   (*Id.*) This establishes probable cause that Esche was someone experiencing a mental

26   health crisis at the time Dr. Vasendin initially evaluated her. *See* NRS § 433A.0175(1)(b).

27       In sum, there was probable cause for Dr. Vasendin to impose the initial, temporary

28   legal hold on Esche and Renown Defendants are entitled to summary judgment on

18

1   Plaintiffs first and seventh unreasonable seizure claims to the extent they are based on

2   the temporary hold. Indeed, Plaintiffs present no evidence that contradicts the evidence

3   described and analyzed above. (ECF No. 109 at 6-9.) And as mentioned, it is not totally

4   clear whether Plaintiffs even challenge the temporary hold.

5        But Plaintiffs unmistakably challenge the court ordered, involuntary admission Dr.

6   Vasendin used to hold Esche at RRMC for much of her time there. (*Id.* at 7.) Plaintiffs

7   argue that the petition Dr. Vasendin filed with the state court contained insufficient facts

8   to allow a judicial officer to make a probable cause determination, and otherwise argue

9   Renown Defendants' seizure of Eshe was unreasonable because they secluded her in

10  her own room and restricted her privileges while she was there. (*Id.*) Renown Defendants

11  reply that their seizure of Esche was reasonable because Plaintiffs' argument is

12  insufficiently supported by applicable caselaw, and Renown Defendants complied with

13  NRS § 433A. (ECF No. 115 at 7-9.) The Court agrees with Renown Defendants.

14       Given the circumstances and their compliance with NRS § 433A, it was not

15  unreasonable of Renown Defendants to hold Esche until after she delivered her baby. To

16  start, Renown Defendants proffered evidence sufficient to support their contention that

17  they complied with NRS § 433A. Dr. Vasendin signed, and Viviana Silva submitted, a

18  petition for involuntary commitment. (ECF No. 93-7 at 2-9.) In it, Dr. Vasendin certified

19  that she examined Esche, that Esche suffered from a mental illness, and Eshe presented

20  a risk of harm to herself and others. (*Id.* at 4-5.) This meets the requirements of NRS §

21  433A.200(1)(a). *See also* NRS § 433A.0175(1) (defining a person in a mental health

22  crisis).[9] Dr. Vasendin also attached to the petition a copy of the mental health crisis packet

23  completed by Dr. Oberhansli, in which Dr. Oberhansli noted that Esche presented a risk

24  to herself and her baby because she had been threatening to leave and deliver her baby

25  at home. (ECF No. 93-7 at 7.) APRN Amy Blitz further certified Dr. Oberhansli's decision;

26  Dr. Vasendin attached that page to her petition as well. (*Id.* at 8.)

27  ///

28

---

[9]The Court accordingly rejects Plaintiffs' contrary argument. (ECF No. 109 at 7.)

1    District Judge Cynthia Lu granted the petition and set a hearing for November 5,

2    2020. (*Id.* at 11.) In her order, Judge Lu certified that all proper notice had been given

3    under the statute. (*Id.*) Judge Lu then moved the hearing back several times, ultimately

4    setting a date of November 25, 2020. (*Id.* at 13-17.) However, before Judge Lu held that

5    hearing, Dr. Bunuel-Jordana withdrew the petition on November 23, 2020. (*Id.* at 19-21.)

6    Thus, while Judge Lu never held an in-person hearing on Dr. Vasendin's petition, the

7    evidence does not show any Renown Defendants missed a hearing or otherwise did not

8    comply with NRS § 433A. And Plaintiffs proffer no evidence to the contrary.

9    Plaintiffs instead argue that it was unreasonable under the Fourth Amendment to

10   keep Eshe in her own room and take away her cell phone, going so far as to state that

11   Renown Defendants "have offered no evidence or argument that it was objectively

12   reasonable to seclude Jill for the entirety of her detention, or to restrain her physically or

13   chemically." (ECF No. 109 at 8.) But to the contrary, Renown Defendants have proffered

14   ample evidence for Esche's seclusion and phone restrictions. The record is replete with

15   examples of Esche assaulting staff and demanding to leave while seemingly not

16   comprehending that leaving could be very dangerous for her and her baby because of

17   her high blood pressure. (ECF No. 93-7 at 2-8; ECF No. 93-5 at 3-10, 18-19, 23-29.)

18   Moreover, Plaintiffs proffer no binding legal authority that supports their argument it was

19   unreasonable within the meaning of the Fourth Amendment to hold Esche at RRMC until

20   after she delivered her baby given Esche's circumstances. (ECF No. 109 at 8-9.) In sum,

21   Plaintiffs have not met their burden to oppose Renown Defendants' summary judgment

22   motion as to their unreasonable seizure claims.

23   Renown Defendants are accordingly entitled to summary judgment on Plaintiffs'

24   first and seventh claims alleging an unreasonable seizure in violation of Esche's rights

25   under the Fourth Amendment and Art. 1, Sec. 18 of the Nevada Constitution.[10] (ECF No.

26   81 at 14-16, 22-24.)

27   _____

28   [10]The Court focused its analysis above on the Fourth Amendment, but the same
analysis applies to the equivalent Nevada Constitutional claim. *See Mack v. Williams*, 522

1

### c.   Procedural Due Process Claims

2      Renown Defendants next argue they are entitled to summary judgment on

3 Plaintiffs' second and eighth claims for violation of Esche's procedural due process rights

4 under the Fourteenth Amendment and Art. 1, Sec. 8(2) of the Nevada Constitution

5 because they complied with NRS § 433A, so she received the process she was due. (ECF

6 No. 93 at 16-18.) Plaintiffs counter that compliance with NRS § 433A does not necessarily

7 mean Esche received the process she was due, and while NRS § 433A.165 appears to

8 sanction the approach Renown Defendants took here, Renown Defendants did not strictly

9 comply with that statute. (ECF No. 109 at 18-22.) The Court agrees with Renown

10 Defendants.

11      The Court already found that Renown Defendants complied with NRS § 433A but

12 did not specifically address NRS § 433A.165. NRS § 433A.165 sanctions the approach

13 Renown Defendants took here. NRS § 433A.165(1) indeed requires that a person

14 experiencing a mental health crisis must be examined by a medical professional and

15 admitted to a hospital if they require care. If the person needs both medical and

16 psychiatric care, a person who has examined them must move for involuntary court-

17 ordered admission after the medical treatment has been completed. *See* NRS §

18 433A.165(2)(a). And then the medical provider must file a weekly update with the court

19 about the person in a mental health crisis regarding their medical condition and treatment.

20 *See* NRS § 433A.165(2)(b).

21      As described in the unreasonable seizure section above, Renown Defendants

22 complied with each of these requirements. It is just unfortunately the case that Esche

23 never got a hearing because she was never medically cleared to attend one while she

24 was still alive. And this appears to be the heart of Plaintiffs' procedural due process

25 challenge. (ECF No. 109 at 18-23.) But while tragic, Plaintiffs' argument that the facts of

26 this case necessarily imply a procedural due process violation is not quite persuasive—

27 _____

28 P.3d 434, 442 (Nev. 2022) (describing the "Fourth Amendment to the U.S. Constitution [as] substantively identical to Article 1, Section 18 of the Nevada Constitution[.]") (citation omitted).

1     for a few reasons. First, NRS § 433A.165 contemplates that a person who needs medical

2     treatment must get it before they can be involuntarily committed for purely mental health

3     reasons, requiring the medical provider to, as Renown Defendants did here, move for

4     involuntary admission upon the conclusion of Esche's medical treatment and then

5     transmit a weekly status report while the Esche was undergoing medical treatment. This

6     suggests that a person requiring medical treatment may be held for some weeks while

7     they receive that treatment. Second, this approach makes practical sense—as the

8     assigned public defender Ms. Rains testified. (ECF No. 93-5 at 90-94 (explaining that a

9     person must be medically cleared before they are transferred to a mental health facility

10    because those facilities are generally not able to provide medical treatment, particularly

11    the sort of treatment Esche needed); *see also* ECF No. 109 at 23-24 (citing Ms. Rains'

12    testimony only for the proposition that holding someone without a hearing until they were

13    medically cleared happened in other cases as well).)

14          Third, and perhaps most importantly, Plaintiffs do not actually dispute that Esche

15    needed medical treatment to ensure a successful delivery of her baby. (ECF No. 93-5 at

16    83 (providing her opinion that Esche needed to be transferred to RRMC because she was

17    pregnant, with chronic hypertension and severe range blood pressure).) Nor do Plaintiffs

18    really dispute that these serious health risks would have resolved before Esche delivered

19    her baby if Renown Defendants had let her leave the hospital. (*See generally* ECF No.

20    109.) Given this evidence and Renown Defendants' compliance with the NRS § 433A

21    statutory scheme, the Court cannot find Renown Defendants violated Esche's procedural

22    due process rights by holding her at RRMC under NRS § 433A for more than 30 days

23    without a hearing.

24          Renown Defendants are accordingly entitled to summary judgment on the

25    procedural due process components of Plaintiffs' second and eighth claims for violation

26

27

28

1    of Esche's rights under the Fourteenth Amendment and Art. 1, Sec. 8(2) of the Nevada

2    Constitution.[11] (ECF No. 81 at 16-17, 24-25.)

3                   **d.     Substantive Due Process**

4            Plaintiffs' due process claims mostly allege violation of her procedural due process

5    rights. (*Id.*) The allegation specific to her substantive due process rights is that once

6    Renown Defendants:

7
> took responsibility for Jill under their Petition for involuntary commitment,
> they had a legal obligation not to release Jill in a condition or manner that

8
> was unsafe or in violation of her constitutional rights. The actions of
> Defendants the last 12 hours of Jill's life evidence a disregard for

9
> reasonable safe discharge practices and unreasonable confinement
> conditions.

10

11    (*Id.* at 17.) Renown Defendants argue this claim fails because they were not state actors

12    at this time—because Dr. Bunuel-Jordana had lifted the legal hold on Esche on November

13    21, 2020. (ECF No. 93 at 19-20.) Plaintiffs counter that the caselaw upon which Renown

14    Defendants rely only generally examines whether a party is a state actor but does not

15    support their argument that they stopped being state actors when Dr. Bunuel-Jordana

16    released the legal hold, and further argue that Renown Defendants did not officially

17    terminate the hold until November 23, 2020, anyway—after Esche died. (ECF No. 109 at

18    14.) In reply, Renown Defendants do not specifically address this evidence that the legal

19    hold was not formally lifted until after Esche died. (ECF No. 115 at 12-14.)

20            It is therefore undisputed that Dr. Bunuel-Jordana did not file the notice of

21    withdrawal of the petition for involuntary civil commitment until November 23. (ECF No.

22    93-3 at 14.) Because Renown Defendants concede they were state actors while the legal

23    hold was in place (ECF No. 93 at 8-9), they were still state actors when Esche died on

24    November 22, 2020 (ECF No. 81 at 13), even though Dr. Bunuel-Jordana decided to

25    discontinue the legal hold on November 21, 2020 (ECF No. 93-5 at 14-16)—because she

26

27                  [11]The same analysis applies to the federal and state constitutional claims. *See*

28    *Wyman v. State*, 217 P.3d 572, 578 (Nev. 2009); *Fore v. State, Nevada Dep't of Corr.*, 131 Nev. 1280 (Nev. App. 2015) ("Nevada's due process clause is co-extensive with the due process clause of the United States Constitution.").

1    had not filed the document giving legal effect to her decision at the time Esche died. The

2    Court accordingly denies Renown Defendants' summary judgment motion as to Plaintiffs'

3    substantive due process claim based on the allegation that Renown Defendants should

4    not have let Esche leave the hospital the night she died because the Court rejects as

5    unpersuasive the only argument they present in their motion as to that allegation. (ECF

6    No. 81 at 17.)

7          However, the Court grants Renown Defendants' summary judgment motion as to

8    Plaintiffs' substantive due process claims to the extent they are based on Esche's

9    involuntary commitment because, as noted above, Renown Defendants' conduct

10   complied with NRS § 433A and otherwise did not rise to the requisite level of conscience-

11   shocking deliberate indifference.

12         "Parents and children may assert Fourteenth Amendment substantive due process

13   claims if they are deprived of their liberty interest in the companionship and society of

14   their child or parent through official conduct." *Lemire v. California Dep't of Corr. & Rehab.*,

15   726 F.3d 1062, 1075 (9th Cir. 2013) (citations omitted). But "[o]nly official conduct that

16   'shocks the conscience' is cognizable as a due process violation." *Id.* (citations omitted).

17   "Deliberate indifference that shocks in one environment may not be so patently egregious

18   in another, and our concern with preserving the constitutional proportions of substantive

19   due process demands an exact analysis of circumstances before any abuse of power is

20   condemned as conscience shocking." *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 850

21   (1998). Indeed, "[a]s the very term 'deliberate indifference' implies, the standard is

22   sensibly employed only when actual deliberation is practical[.]" *Id.* at 851 (citation

23   omitted).

24         Because it is undisputed that Renown Defendants held Esche for more than 30

25   days, they had time to deliberate, and the deliberate indifference version of the 'shocks

26   the conscience' test applies here.[12] And whether Renown Defendants were deliberately

27   _____

28         [12]This "standard differs from the 'deliberate indifference' standard used in Eighth
     Amendment cruel and unusual punishment cases, in that '[p]ersons who have been

1   indifferent in this context requires the Court to ask whether their conduct was reasonable,

2   though Plaintiffs can only prevail if they can show that Renown Defendants' conduct in

3   involuntarily committing and medicating Esche was "worse than negligent." *Alexander v.*

4   *Nguyen*, 78 F.4th 1140, 1144 (9th Cir. 2023); *see also Ammons*, 648 F.3d at 1027

5   ("[W]hether a hospital administrator has violated a patient's constitutional rights is

6   determined by whether the administrator's conduct diverges from that of a reasonable

7   professional.").

8           The undisputed facts here do not show that Renown Defendants' treatment of

9   Esche while she was involuntarily committed was worse than negligent. To start, it is

10  undisputed Dr. Oki successfully delivered Esche's baby, who is now one of the Plaintiffs

11  in this case through her father. So Renown Defendants' approach was successful in the

12  sense that it mitigated one of the primary concerns Renown Defendants had when Esche

13  was transferred to RRMC and Dr. Vasendin decided to place a legal hold on her. (ECF

14  Nos. 93-5 at 3 (describing risks if Esche left hospital), 5 (same, also noting that Esche

15  stated she would deliver the baby herself), 6-8 (noting concerns including hypertension

16  and that she "needs further psychiatric stabilization for her safety" in the set of notes

17  reflecting Dr. Vasendin's decision to extend the legal hold), 70 ("a patient can have a

18  seizure and/or stroke and die[,]" which in turn can cause fetal injury).) Similarly, Esche

19  did not die until she left RRMC against medical advice following delivery. (*See generally*

20  *id.*; *see also* ECF No. 81 at 13.) Thus, Renown Defendants' actions were medically

21  successful during Esche's involuntary commitment. And there is no dispute about these

22  basic facts. So the Court cannot find that Renown Defendants were 'more than negligent'

23  in holding Esche against her will at RRMC.

24          Moreover, and as the Court found above, Renown Defendants followed the

25  pertinent provisions of the NRS § 433A involuntary commitment scheme. Like the scheme

26  _____

27  involuntarily committed are entitled to *more considerate treatment and conditions of*
    *confinement* than criminals whose conditions of confinement are designed to punish.'"

28  *Mitchell v. Washington*, 818 F.3d 436, 443 (9th Cir. 2016) (first citing *Ammons v.*
    *Washington Dep't of Soc. & Health Servs.*, 648 F.3d 1020, 1027 (9th Cir. 2011), which
    was quoting *Youngberg v. Romeo*, 457 U.S. 307, 323 (1982)).

held not to violate the plaintiff's substantive due process rights in *Washington v. Harper*, 494 U.S. 210, 225 (1990), NRS § 433A required Dr. Vasendin to make a finding that Esche posed a substantial risk of harm to herself or others before she could hold Esche. Dr. Vasendin made that finding, which aligned with the findings Dr. Oberhansli and APRN Amy Blitz at CTH had already made. (ECF No. 93-7 at 1-9.) Also like the scheme in *Washington*, the NRS § 433A scheme Renown Defendants followed here accounted for "the legitimate governmental interest in treating [her] where medically appropriate for the purpose of reducing the danger" she posed to herself and her unborn baby. *Washington*, 494 U.S. at 226. Thus, Renown Defendants' compliance with the NRS § 433A scheme further establishes that Renown Defendants did not violate her substantive due process rights in involuntarily committing her.

In sum, the Court grants Renown Defendants' summary judgment motion on Plaintiffs second and eighth claims to the extent they allege violations of her substantive due process rights, and to the extent they are based on her involuntary commitment to, and medication at, RRMC. But as noted, Plaintiffs' substantive due process claims will proceed past summary judgment to the limited extent they are based on Renown Defendants' decision to let Esche leave RRMC against medical advice after Dr. Bunuel-Jordana decided to lift the legal hold Renown Defendants had imposed on Esche.

### e.    Failure to Train and Conspiracy Claims

Renown Defendants also seek summary judgment on Plaintiffs' failure to train or supervise claim, along with Plaintiffs' conspiracy to violate civil rights claim. (ECF No. 93 at 20-23.) However, a key component of Defendants' argument regarding the failure to train or supervise claim and the only component of Defendants' argument regarding the conspiracy claim is that there is no underlying constitutional violation. (*Id.*) But as explained above, the Court is permitting only Plaintiffs' substantive due process claims to proceed past summary judgment to the limited extent they are based on Renown Defendants' decision to let Esche leave RRMC against medical advice after Dr. Bunuel-Jordana decided to lift the legal hold they had imposed on Esche. Thus, the conspiracy

1    claim must also proceed past summary judgment to the same limited extent. And Renown

2    Defendants' motion for summary judgment is granted to a correspondingly limited extent.

3          As to the failure to train or supervise claim, Plaintiffs discuss it in the portion of their

4    opposition brief addressing their general negligence claim[13] (ECF No. 109 at 29), and

5    otherwise question whether RRMC's discharge policies were adequate when it came to

6    letting Esche leave. Plaintiffs further point to declarations from their other experts, Dr.

7    Michael J. Ostacher and James Allister Morris, RN, in which they also opine that RRMC's

8    discharge policies were inadequate. (ECF No. 109 at 29-30; ECF No. 109-21; ECF No.

9    109-22.) Renown Defendants do not address this evidence in the portion of their reply

10   addressing the failure to train claim, probably because Plaintiffs did not include in the

11   portion of their opposition addressing that claim. (ECF No. 115 at 15-16.)

12         But this evidence indicates genuine disputes of material fact regarding the

13   adequacy of RRMC's discharge policies. And again because the Court is permitting

14   Plaintiffs' substantive due process claims to proceed past summary judgment to the

15   limited extent they are based on allowing Esche to leave RRMC against medical advice,

16   this dispute about the adequacy of RRMC's discharge policies also precludes summary

17   judgment on the failure to train and supervise claim because the Court cannot say at this

18   juncture whether the disputed discharge policies "caused the violation" if the Court later

19   finds Renown Defendants violated Esche's substantive due process rights when they let

20   her leave against medical advice. *Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1143 (9th

21   Cir. 2012). Renown Defendants' motion for summary judgment is accordingly granted in

22   part, and denied in part, as to Plaintiffs' failure to train or supervise claim. It is denied only

23   to the limited extent RRMC's discharge policies caused any violation of Esche's

24   substantive due process rights when Renown Defendants let Esche leave RRMC against

25   medical advice, but otherwise granted.

26

27         [13]Plaintiffs point to some deposition testimony from one of their experts, Dr.
     Kimberly Long, in which she opines that RRMC's discharge policy was inadequate
28   because it did not provide any guidance about patients who wish to leave against medical
     advice. (ECF No. 109-5 at 3-6.)

1

2          **f.      General Negligence Claim**

3          Renown Defendants finally move for summary judgment on Plaintiffs' fifth claim

alleging general negligence because they contend it is really a medical negligence claim

against the individual defendants and Plaintiff's expert Dr. Long admitted RRMC's

discharge polices met joint commission standards. (ECF No. 93 at 23-24.) Plaintiffs

counter that Renown Defendants' alleged breaches of their duty of care in letting Esche

leave against medical advice in the cold early morning hours do not require medical

judgment and thus their general negligence claim should proceed. (ECF No. 109 at 27-

28.) As to RRMC specifically, Plaintiffs argue that their expert, Dr. Long, testified that

RRMC breached its duties to Esche even though RRMC's policies comply with joint

commission standards, and point out that their other experts criticize RRMC's policies as

well. (*Id.* at 29-30.) The Court agrees with Plaintiffs.

13          In the case both parties cite to delineate between medical and general negligence

claims (ECF Nos. 93 at 23, 109 at 26-28), *Szymborski v. Spring Mountain Treatment Ctr.*,

403 P.3d 1280 (Nev. 2017), the Nevada Supreme Court found that a claim against a

social worker for discharging a disturbed son to his father's house was a general

negligence claim because the factual allegations underlying that claim did not involve

medical diagnosis, treatment, or judgment. *See id.* at 1287-88. As Plaintiffs argue (ECF

No. 109 at 26-28), their general negligence claim (ECF No. 81 at 20-21) is similar.

Plaintiffs allege that Renown Defendants should not have let Esche leave the hospital

against medical advice between 3 and 4 in the morning without notifying her boyfriend or

other family members, without a record of who would be picking her up, in thin clothing

during cold weather, while under the influence of various medications, and even after

RRMC staff watched her struggle as she attempted to cross the park in front of the

hospital. (*Id.* at 11-13.) The Court agrees with Plaintiffs that determining whether these

actions and inactions constituted breaches of Renown Defendants' duty of care does not

require medical diagnosis or judgment. The Court accordingly also agrees with Plaintiffs

that their general negligence claim against the individual Renown Defendants may

28

1   proceed, having rejected the only argument Renown Defendants offered as to why they

2   are entitled to summary judgment on it.

3       As to RRMC specifically, the Court also agrees with Plaintiffs that Dr. Long's

4   deposition testimony does not neatly establish an absence of disputed fact, but instead,

5   when read in its entirety, indicates disputed factual issues. (ECF No. 109 at 29.) And the

6   Court further agrees with Plaintiffs that the fact that Plaintiffs' other experts opine that

7   RRMC was generally negligent for letting Esche leave further illustrates the factual

8   disputes that remain as to this claim. (*Id.* at 29-30.)

9       In sum, the Court denies Renown Defendants' motion for summary judgment as

10  to Plaintiffs' general negligence claim (ECF No. 81 at 20-21).

11              **3.    Plaintiffs' Motion for Summary Judgment**

12      Plaintiffs also moved for summary judgment. (ECF No. 99.) But the Court's

13  adjudication of Plaintiffs' motion is entirely dictated by the Court's analysis above of Dr.

14  Oki and Renown Defendants' motions. To reiterate the Court's findings more specifically,

15  but keyed to Plaintiffs' motion, Dr. Oki is not a state actor, but Renown Defendants are.

16  (*Id.* at 15 (seeking a ruling that all defendants are state actors).) Renown Defendants are

17  entitled to summary judgment on Plaintiffs' procedural due process claims, and Plaintiffs'

18  substantive due process claims, except to the limited extent those substantive due

19  process claims are based on Renown Defendants letting Esche leave the hospital against

20  medical advice. (*Id.* at 23 (moving for summary judgment on their procedural due process

21  claims), 26 (seeking a ruling on another component of their due process claims).) Finally,

22  Renown Defendants are not entitled to good-faith immunity as to Plaintiffs' substantive

23  due process claims, to the limited extent those substantive due process claims are based

24  on Renown Defendants letting Esche leave the hospital against medical advice, as those

25  are the limited claims the Court permits to proceed past this order. (*Id.* at 29 (arguing

26  Defendants are not entitled to various forms of immunity).)

27  ///

28  ///

**IV.    CONCLUSION**

The Court notes that the parties made several arguments and cited several cases not discussed above. The Court has reviewed these arguments and cases and determines that they do not warrant discussion as they do not affect the outcome of the motions before the Court.

It is therefore ordered that Defendants Marta J. Bunuel-Jordana, M.D., Johanna Gruen, PhD., Caitlin E Herschel, RN, Renown Regional Medical Center, Meagen Smith, and Caroline Vasendin, M.D.'s motion for summary judgment (ECF No. 93) is granted in part, and denied in part, as specified herein.

It is further ordered that the Court construes these same defendants' notice regarding the filing of documents under seal (ECF No. 94) as a motion to seal and denies it. The Clerk of Court is accordingly directed to unseal these defendants' motion for summary judgment (ECF No. 93), along with the exhibits thereto (ECF Nos. 93-1, 93-2, 93-3, 93-4, 93-5, 93-6, 93-7, 93-8).

It is further ordered that Defendant Earle Oki, MD's motion for summary judgment (ECF No. 95) is granted. Defendant Earle Oki, MD is entitled to summary judgment on all Plaintiffs' claims asserted against him.

It is further ordered Defendant Dr. Oki's motion to seal (ECF No. 96) is denied. The Clerk of Court is further directed to unseal the records Defendant Dr. Oki filed under seal with his motion (ECF Nos. 97, 97-1, 97-2, 97-3).

It is further ordered that Plaintiffs' motion for summary judgment (ECF No. 99) is granted in part, and denied in part, as specified herein.

It is further ordered that Plaintiffs' motion for leave to file excess pages (ECF No. 112) is granted. The Court reviewed and considered the entirety of Plaintiffs' reply in support of their motion for summary judgment in ruling on the pending motions.

The Court finds it appropriate to refer this case for a settlement conference before United States Magistrate Judge Carla Baldwin under LR 16-5. If this case does not settle

at that settlement conference, the Joint Pretrial Order is due within 30 days of the settlement conference being held.

DATED THIS 12th Day of September 2024.

_____
MIRANDA M. DU
CHIEF UNITED STATES DISTRICT JUDGE

31