UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| THE ESTATE OF JILL ANN ESCHE, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>RENOWN REGIONAL MEDICAL CENTER, *et al.*,<br><br>Defendants. | Case No. 3:21-cv-00520-MMD-CLB<br><br>ORDER |

**I.   SUMMARY**

This is a sad case. A woman, Jill Ann Esche, died shortly after delivering her baby, and after being held involuntarily at a hospital for more than a month. After Esche's death, Plaintiffs The Estate of Jill Ann Esche, Sierra Jill Wofford (the baby that was born) by and through her guardian ad litem Wayne Wofford (Esche's boyfriend at the time of her death), and Cameron Scott Esche (Esche's son from a prior relationship) sued Defendants Renown Regional Medical Center ("RRMC"), Marta J. Bunuel-Jordana, M.D., Caroline Vasendin, M.D., Johanna Gruen, PhD., Maegen Smith, RN, and Caitlin E. Herschel, RN (the "Renown Defendants"), and Earle Oki, M.D., alleging civil rights violations and negligence claims. (ECF No. 81.) The Court granted summary judgment to Dr. Oki and partial summary judgment to Renown Defendants. (ECF No. 121 ("MSJ Order").) Before the Court are: (1) Renown Defendants' motion for reconsideration of the Court's decision to deny Renown Defendants summary judgment on Plaintiffs' general negligence claim (Count Five) (ECF No. 125);[1] (2) Plaintiffs' motion to certify the portion of the MSJ Order granting summary judgment in Dr. Oki's favor as final so they can more quickly appeal

---

[1]Plaintiffs responded (ECF No. 131) and Renown Defendants replied (ECF No. 138).

the Court's ruling that he was not a state actor (ECF No. 134);[2] and (3) Plaintiffs' objection (ECF No. 128) to Dr. Oki's bill of costs (ECF No. 123) filed after the Court granted Dr. Oki summary judgment in the MSJ Order.[3] As further explained below, the Court will deny both motions and reject Dr. Oki's bill of costs as premature because it is unpersuaded it should reconsider the MSJ Order, and the MSJ Order is not a final order—nor will the Court certify it as one because there is a just reason for delay here.

**II.   DISCUSSION**

The Court first addresses Renown Defendants' motion for reconsideration, then Plaintiffs' motion for a certificate of appealability, and then finally explains why Dr. Oki's bill of costs is premature.

**A.   Motion for Reconsideration**

The Court denied Renown Defendants' motion for summary judgment on Plaintiffs' general negligence claim based on Renown Defendants' argument that it was, in fact, a medical negligence claim. (ECF No. 121 at 28-29.) Renown Defendants move for reconsideration of that decision based on *Limprasert v. PAM Specialty Hosp. of Las Vegas*, 550 P.3d 825 (Nev. 2024), which Renown Defendants contend was decided after the briefing was completed on Renown Defendants' summary judgment motion and changed the law for determining whether a claim sounds in general or professional negligence. (ECF No. 125 at 2.) Plaintiffs counter that *Limprasert* did not change the law, much less in a way meriting reconsideration. (ECF No. 131 at 2.) The Court agrees with Plaintiffs.

A motion for reconsideration must set forth "some valid reason why the court should reconsider its prior decision" and set "forth facts or law of a strongly convincing nature to persuade the court to reverse its prior decision." *Frasure v. United States*, 256 F. Supp. 2d 1180, 1183 (D. Nev. 2003) (citation omitted). Reconsideration is appropriate if the Court "(1) is presented with newly discovered evidence, (2) committed clear error or

---

[2]Renown Defendants (ECF No. 139) and Dr. Oki (ECF No. 142) filed responses.

[3]Dr. Oki also filed a response to Plaintiffs' objection. (ECF No. 137.)

the initial decision was manifestly unjust, or (3) if there is an intervening change in controlling law." *Sch. Dist. No. 1J v. ACandS, Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993) (citation omitted).

As noted, Renown Defendants argue for reconsideration under the intervening change in controlling law avenue for reconsideration. However, the Nevada Supreme Court filed *Limprasert* on June 27, 2024, *see* 550 P.3d 825, well before the Court issued the MSJ Order on September 12, 2024 (ECF No. 121), and before Renown Defendants moved for reconsideration based on it on September 27, 2024 (ECF No. 125). Renown Defendants do not explain why they did not notify the Court about the purportedly dispositive impact of *Limprasert* before the Court issued the MSJ Order. (*Id.*) But Renown Defendants had a couple of months before the Court issued the MSJ Order during which they could have filed a motion for leave to file supplemental authority, *see* LR 7-2(g) (permitting for motions for leave to file supplemental authority), but they did not. The Court finds this delay weighs against granting reconsideration based on *Limprasert*. Indeed, it is generally expected that attorneys let courts know in a timely manner about new, controlling authority. *See, e.g.*, Fed. R. App. P. 28(j) ("If pertinent and significant authorities come to a party's attention after the party's brief has been filed—or after oral argument but before decision—a party may promptly advise the circuit clerk by letter, with a copy to all other parties, setting forth the citations."). And under the Court's Local Rules, lack of diligence or timeliness permits the Court to deny Renown Defendants' motion for reconsideration on this ground alone. *See* LR 59-1(C). If the Nevada Supreme Court publishes new opinions that could have a dispositive impact on issues pending before the Court, the Court expects counsel to expeditiously notify the Court through a motion for leave to file supplemental authority.

Regardless, the Court is unconvinced that it should now grant summary judgment to Renown Defendants on Plaintiffs' general negligence claim based on *Limprasert*. Indeed, as Plaintiffs argue (ECF No. 131 at 3-5), *Limprasert* did not overrule *Szymborski v. Spring Mountain Treatment Ctr.*, 403 P.3d 1280 (Nev. 2017), upon which the Court

3

relied in the MSJ Order (ECF No. 121 at 28). Quite the opposite. The *Limprasert* court described *Szymborski* as part of a body of caselaw consistent with the clarified understanding of the difference between general and professional negligence claims it articulated in *Limprasert*. *See* 550 P.3d at 830. *Limprasert* cannot accordingly constitute an intervening change in controlling law warranting reconsideration because it did not even purport to alter or cast doubt upon the very case upon which the Court relied.

In addition, and alternatively, the *Limprasert* court articulated the 'new' test as "whether the claim pertains to an action that occurred within the course of a professional relationship." *Id.* "If it does not, the claim is for ordinary negligence." *Id.* The basis of Plaintiffs' general negligence claim is that Renown Defendants should not have let Esche leave against medical advice, or said otherwise, that they should not have let her terminate their professional relationship. (ECF No. 81 at 20.) Their general negligence claim accordingly does not arise from an action that occurred within the course of the professional relationship between Esche and Renown Defendants—and is thus one for general negligence. *See id.* Indeed, the facts of *Limprasert* illustrate the distinction between it and this case. The *Limprasert* court found that the plaintiff's claim was for professional negligence because they dropped and injured him while they were taking care of him, in a hospital, while he was bedridden with a severe case of COVID-19. *See id.* at 828, 831. Even though they dropped him—and knowing not to drop someone does not require any medical expertise—the plaintiff's claim against the medical providers was properly one for professional negligence because it happened while they were taking care of him in the hospital. *See id.* In contrast, Plaintiffs' general negligence claim pertains to an action that did not occur within the course of Esche's professional relationship with Renown Defendants because Plaintiffs' basis for it is essentially that Renown Defendants should not have let Esche terminate their professional relationship—the alleged negligence happened just after the relationship ended. (ECF No. 81 at 20.)

In sum, the Court denies Renown Defendants' motion for reconsideration. They waited too long to file it, but regardless, the Court finds its decision to deny Renown

1  Defendants summary judgment on Plaintiffs' general negligence claim consistent with
2  *Limprasert*.

3       **B.**      **Motion for a Certificate of Appealability**

4  Plaintiffs move the Court to certify the MSJ Order as final as to Dr. Oki under Fed.
5  R. Civ. P. 54(b) so that they can appeal it. (ECF No. 134.) Renown Defendants take no
6  position on the motion but nonetheless respond to it to dispute several contentions
7  Plaintiffs make in it, which Renown Defendants contend are inaccurate.[4] (ECF No. 139.)
8  Dr. Oki opposes the motion because the MSJ Order is not a final order, as it does not
9  resolve all claims against all parties, Plaintiffs made a contradictory argument that the
10 MSJ Order is not a final order in objecting to Dr. Oki's bill of costs, and their conspiracy
11 claim is still proceeding against Renown Defendants. (ECF No. 142.) The Court agrees
12 with Dr. Oki.

13 To certify an order under Rule 54(b), the Court "must first determine that it has
14 rendered a 'final judgment,' that is, a judgment that is 'an ultimate disposition of an
15 individual claim entered in the course of a multiple claims action.'" *Wood v. GCC Bend,*
16 *LLC*, 422 F.3d 873, 878 (9th Cir. 2005) (citations omitted). The second step is to
17 determine whether there is any just reason for delay, a determination informed by the
18 interests of sound judicial administration and the historic federal policy against piecemeal
19 appeals. *See id.* The Court is given significant discretion at the second step to take a
20 "pragmatic approach focusing on severability and efficient judicial administration[.]" *Id.* at
21 878, 880 (citation omitted).

---

[4] The Court agrees with Renown Defendants that the Court did not find Renown Defendants were state actors; the Court analyzed the motions leading to the MSJ Order as if they were for purposes of that order. Indeed, the Court noted in the MSJ Order that, "Renown Defendants do not dispute that they are state actors for purposes of the pending motions[.]" (ECF No. 121 at 6.) The Court accordingly rejects Plaintiffs' contention that Renown Defendants "have waived any appellate challenge" to whether they are state actors. (ECF No. 134 at 2.) That said, the Court does not weigh in on Plaintiffs and Renown Defendants' dispute as to whether Renown Defendants' appeal of the Court's finding that Renown Defendants are not entitled to good faith immunity is premature—the United States Court of Appeals for the Ninth Circuit will determine whether that ruling is immediately appealable because Renown Defendants already filed their notice of appeal. (ECF Nos. 129, 130.)

Beginning with the first step, the MSJ Order does not resolve all claims against all parties to this case, so it is not a final judgment. Specifically, the following of Plaintiffs' claims against Renown Defendants are proceeding towards trial: medical negligence/wrongful death (ECF No. 121 at 14); the substantive due process, failure to train or supervise, and conspiracy claims, "to the limited extent they are based on Renown Defendants' decision to let Esche leave RRMC against medical advice after Dr. Bunuel-Jordana decided to lift the legal hold Renown Defendants had imposed on Esche" (*id.* at 26-27); and the general negligence claim, which is also based on Renown Defendants' decision to let Esche leave against medical advice (*id.* at 28-29). And while it is true that the Court found Dr. Oki was entitled to summary judgment on all Plaintiffs' claims against him (*id.* at 30), Plaintiffs' contention in their pending motion that, "the Court's grant of summary judgment that Oki was not a state actor completely extinguishes all of the Plaintiffs' claims against him" is not accurate (ECF No. 134 at 2). Instead, the Court noted in the MSJ Order that its state actor determination did not resolve Plaintiffs' conspiracy claim, going on to find that Plaintiffs had not proffered evidence sufficient to show that Dr. Oki conspired with Renown Defendants. (ECF No. 121 at 11-13.) So while the Court did find Dr. Oki was entitled to summary judgment on all claims asserted against him in the MSJ Order, it was not only because the Court found he was not a state actor.

This brings the Court to the second step—whether there is any just reason for delay. *See Wood*, 422 F.3d at 878-80 (describing the considerations that go into resolving the second step of the analysis). Because Plaintiffs' conspiracy claim is proceeding against Renown Defendants and Dr. Oki was both part of the alleged conspiracy and undisputedly part of Esche's care team, the jury will consider facts related to Dr. Oki when it adjudicates Plaintiffs' conspiracy claim against Renown Defendants. It is also likely Plaintiffs will call Dr. Oki as a witness as to that claim. It is moreover reasonable to assume Plaintiffs will appeal if Renown Defendants prevail on that claim at trial. There is thus a risk of piecemeal appeals as to the conspiracy claim. Similarly, if the Ninth Circuit were to issue a decision on Plaintiffs' appeal of the conspiracy claim as to Dr. Oki before the

end of trial on the merits of that claim as to Renown Defendants, the Ninth Circuit's decision would impact the adjudication of that claim as to Renown Defendants. In sum, there is a just reason for delay here: awaiting final resolution of the conspiracy claim to avoid inconsistent decisions and multiple appeals.

The Court accordingly denies Plaintiffs' motion to certify the MSJ Order as a final judgment against Dr. Oki.

### C. Plaintiffs' Objection to Dr. Oki's Bill of Costs

Plaintiffs contend that the Court should reject as premature Dr. Oki's bill of costs (ECF No. 123) because the MSJ Order is not a final order, and the Court has not entered a final judgment under Rule 54(b) (ECF No. 128 at 2). Setting aside the fact that this position is in tension with the Plaintiffs' position that the Court should certify the MSJ Order as a final judgment, the Court agrees with Plaintiffs for the reasons specified above. The MSJ Order is not a final judgment. And rejecting Dr. Oki's bill of costs as premature is consistent with the Court's decision denying Plaintiffs' motion to certify the MSJ Order as a final judgment explained above. But the Court understands why Dr. Oki filed his bill of costs when he did. As he explains, he did not want to "risk waiving his right to seek costs as a prevailing party." (ECF No. 137 at 3.) To reassure Dr. Oki that he is not prejudiced by the Court's decision to reject his bill of costs as premature, the Court's rejection is without prejudice to Dr. Oki refiling his bill of costs within 14 days of the Court entering final judgment in this case. *See* LR 54-1(a).

### III. CONCLUSION

The Court notes that the parties made several arguments and cited several cases not discussed above. The Court has reviewed these arguments and cases and determines that they do not warrant discussion as they do not affect the outcome of the motions before the Court.

It is therefore ordered that Renown Defendants' motion for reconsideration (ECF No. 125) is denied.

///

It is further ordered that Plaintiffs' motion for a certificate of appealability (ECF No. 134) is denied.

It is further ordered that Defendant Earle Oki, MD's bill of costs (ECF No. 123) is rejected, without prejudice to refiling within 14 days of the Court entering final judgment in this case, and Plaintiffs' objection to Defendant Earle Oki, MD's bill of costs (ECF No. 128) is accordingly overruled as moot.

DATED THIS 31st Day of October 2024.

_____
MIRANDA M. DU
CHIEF UNITED STATES DISTRICT JUDGE